# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RODRICK S. BETZ**                                          **CIVIL ACTION**

**VERSUS**                                                       **NO. 22-162-BAJ-SDJ**

**JAMES LEBLANC, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 20, 2023.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RODRICK S. BETZ**                                              **CIVIL ACTION**

**VERSUS**                                                       **NO. 22-162-BAJ-SDJ**

**JAMES LEBLANC, ET AL.**

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

This matter comes before the Court on the Motion to Dismiss filed on behalf of Defendants James LeBlanc and Tim Hooper (R. Doc. 14). The Motion is opposed. *See* R. Doc. 16[1].

The *pro se* Plaintiff, a person formerly confined at Louisiana State Penitentiary, filed this proceeding against Defendants Secretary James LeBlanc, Warden Tim Hooper, and records department employee Tyreka Hardy,[2] complaining that his constitutional rights were violated due to eight months of overdetention. He seeks monetary relief.

Defendants LeBlanc and Hooper first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of Plaintiff's § 1983 claims against them in their official capacities. In this regard, Defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme

---

[1] Plaintiff has styled his opposition as a motion.
[2] With regards to Defendant Hardy, service has not been made. *See* R. Doc. 9. In that regard, pursuant to the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of commencement of an action is cause for dismissal of that defendant from the proceeding. Accordingly, Defendant Hardy should be dismissed pursuant to Rule 4(m).

Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, any of Plaintiff's § 1983 claims asserted against Defendants in their official capacities for monetary damages are subject to dismissal.

Turning to Plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, Defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding this, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, Plaintiff alleges the following: On May 11, 2021, Plaintiff's life sentence was vacated, and he was resentenced to a term of ten years. Plaintiff was scheduled to be released on May 12, 2021, but he was not released until January 14, 2022. During the eight months Plaintiff was unlawfully detained, he did not receive the treatment needed for his chronic illnesses.

In response to Plaintiff's allegations, Defendants assert that they are entitled to qualified immunity in connection with Plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would

have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that the Motion to Dismiss filed on behalf of Defendants LeBlanc and Hooper should be denied with regards to Plaintiff's claim for overdetention, without prejudice to refiling after the time for Plaintiff to file an amended complaint has expired.

## Overdetention

That there is a clearly-established right to timely release from prison is not disputed in this matter. The question is whether Plaintiff has alleged sufficient facts to plausibly allege a violation of this constitutional right by Defendants LeBlanc and Hooper.

As this Court recently explained in the overdetention case of *McNeal v. Louisiana Department of Public Safety & Corrections*, 589 F.Supp.3d 428, 436-437 (M.D. La. 4/1/22), Plaintiff must allege facts tending to show deliberate indifference on the part of Defendants LeBlanc and Hooper:

> "A supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id.* (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted)).
>
> " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)). "Deliberate indifference requires a showing of more than negligence or

even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Id.* (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Additionally, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)). Nevertheless, "[l]iability for failure to promulgate policy ... require[s] that the defendant ... acted with deliberate indifference." *Id.* As the Fifth Circuit stated with respect to "failure-to-train" claims:

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes ... employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat* superior liability. *Porter*, 659 F.3d at 447 (citations, alterations, and quotations omitted).

This Court found McNeal's allegations sufficient to allege a constitutional violation on behalf of Secretary LeBlanc. McNeal's allegations were described as follows:

> The Amended Complaint describes a widespread pattern of overdetention at the DPSC, which was so well-settled as to constitute "*de facto* policy." (*See* Doc. 91 at ¶ 202.) Plaintiff alleges that, the day before he was incarcerated, "the Louisiana Legislative Auditor released a report finding that the DOC had a serious problem of not knowing where its inmates were located, or when their proper release date was." (*Id.* at ¶ 9.) Further, Plaintiff's allegations suggest that LeBlanc was aware of this report. (*See id.* at ¶¶ 127, 129–30, 228.) Plaintiff also avers that in 2018, Defendants' own lawyer, the Attorney General, wrote an op-ed conceding that there "is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison." (*Id.* at ¶ 12.)
>
> Additionally, Plaintiff alleges that "multiple DOC employees testified" in *Chowns v. LeBlanc*, La. 37th JDC 26-932—a case in which LeBlanc was sued (*see id.* at ¶ 122)—regarding a well-documented pattern of over-detention. (*See id.* at ¶ 73.) For instance, DOC employee Tracy Dibenetto testified that DOC staff "discovered approximately one

case of overdetention per week for the last nine years," with some inmates "incorrectly incarcerated for periods of up to a year." (*Id.* at ¶ 73(a).) Similarly, DOC records analyst Cheryl Schexnayder testified that in the course of her job, she reviewed inmate sentences and found that they had been "done wrong" and that "the inmate was entitled to immediate release." (*Id.* at ¶ 73(c).) The Amended Complaint also alleges that in a grant application to the federal government, the DPSC disclosed that in 2017, it "had an average of 200 cases per month considered an 'immediate release' " due to its pattern of overdetention. (*See id.* at ¶ 91.)

Finally, Plaintiff alleges that LeBlanc championed the "Lean Sigma Six" review of the DPSC's inmate time calculation processes project. (*See id.* at ¶¶ 54–55.) This review project found that when the DPSC calculated the release date of inmates, 83% were eligible for immediate release due to an earlier release date. (*See id.* at ¶ 56; *see also id.* at ¶¶ 57–60.) Plaintiff alleges that despite being alerted to this problem, LeBlanc did not set of a goal of fixing it. (*Id.* at ¶¶ 61–65.) For example, in 2015, the DPSC tried an electronic record management system for a short period before ultimately going back "to its old 1990s era CAJUN system." (*Id.* at ¶ 69.) "As a result, *439 the functional processes around the transmission of documents remain as antiquated as they were in 1996." (*Id.* at ¶ 70 (citations omitted); *see also id.* at ¶¶ 71–72.)

In the instant matter, Plaintiff's allegations share no comparison with those of the plaintiff in *McNeal*. Plaintiff's allegations are limited to the fact that he was overdetained for eight months. Plaintiff has not alleged any action or inaction on the part of Defendants that caused his untimely release. As such, Plaintiff's Complaint is devoid of any allegations tending to show deliberate indifference on the part of Defendant LeBlanc or Defendant Hooper.

However, a district court should not dismiss a *pro se* complaint on a motion to dismiss without first providing the plaintiff an opportunity to amend, unless it is obvious from the record that the plaintiff has pled his best case. *Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011). Courts are encouraged to grant leave to amend the complaint once to cure deficiencies before dismissing a lawsuit with prejudice. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("Although a court may dismiss [a deficient] claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."). It is appropriate in this matter to grant

Plaintiff leave to file an amended complaint should he wish to cure the aforementioned deficiencies.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that Plaintiff's Motion to Counter Dismissal (R. Doc. 16) be denied and that the Motion to Dismiss filed on behalf of Defendants LeBlanc and Hooper (R. Doc. 14) should be granted in part, dismissing Plaintiff's claims for monetary damages asserted against these Defendants in their official capacities. It is further recommended that, in all other regards, Defendants' Motion be denied, without prejudice to refiling. It is further recommended that Plaintiff be given 21 days to amend his Complaint to allege facts tending to show deliberate indifference on the part of Defendant LeBlanc and/or Defendant Hooper, and that this matter be referred back to the Magistrate Judge for further proceedings herein. It is further recommended that Plaintiff's claims against Defendant Hardy should be dismissed, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m).

Signed in Baton Rouge, Louisiana, on March 20, 2023.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**